UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Charles A. Whobrey,<br><br>    Plaintiff,<br><br>  v.<br><br>Dearborn Wholesale Grocers, L.P., and<br>Dearborn Wholesale Grocers, Inc.<br><br>    Defendants. | Case No. 24-cv-06724<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Charles A. Whobrey, trustee of the Pension Fund, sues defendant Dearborn for breach of contractual indemnity. [1]. Non-party P.T.O. Services, Inc. agreed to make payments to the Pension Fund on behalf of certain employees. P.T.O. was in the business of labor leasing, so some of its employees performed work for Dearborn. In 1997, P.T.O. and Dearborn entered into a one-year driver leasing agreement. Whobrey alleges that, in accordance with that driver leasing agreement, Dearborn must indemnify P.T.O. for liabilities P.T.O. incurred to the Pension Fund between 2002 and 2011. *Id.* ¶ 1. Defendant Dearborn moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) in part because Whobrey does not plausibly allege the existence of a valid contract during the time relevant to this lawsuit. [15]. For the reasons explained below, the Court grants Dearborn's motion to dismiss.

1

I. **Complaint's Allegations**[1]

Plaintiff Whobrey, a citizen of Indiana, acts as a trustee, plan sponsor, and administer of the Central States, Southeast and Southwest Areas Pension Fund located in Chicago, Illinois. [1] ¶¶ 10, 11. The Pension Fund is a multiemployer pension plan within the meaning of the Multiemployer Pension Plan Amendments Act of 1980. *Id.* ¶ 10; *see* 29 U.S.C. §§ 1002(37), 1301(a)(3) (2024). Defendant Dearborn comprises Dearborn Wholesale Grocers, L.P., an Illinois limited partnership, and Dearborn Wholesale Grocers, Inc., an Illinois corporation that acts as a general partner to Dearborn Wholesale, L.P. [hereinafter, collectively "Dearborn"]. *Id.* ¶¶ 12–13.

Non-party P.T.O. Services, Inc. and Dearborn maintained a business relationship whereby P.T.O. employed drivers and leased its employee drivers to Dearborn. [1] ¶ 5. P.T.O. contributed to the Pension Fund on behalf of its employee drivers pursuant to certain collective bargaining agreements it entered into with local unions. *Id.* ¶¶ 5, 23. In Whobrey's complaint, he states that during all relevant times, "P.T.O. on the one hand and Dearborn Wholesale on the other hand were and/or are parties to a driver leasing agreement." *Id.* ¶ 22. Whobrey attached both the Pension Fund plan, [1-1], and a driver leasing agreement between P.T.O. and Dearborn, [1-2], to his complaint.

---

[1] The Court draws all allegations in this section from Plaintiff's Complaint. [1].

2

On March 18, 2012, P.T.O. "ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations," which triggered a different obligation. *Id.* ¶¶ 6, 26. When an employer withdraws from a multiemployer plan, like the Pension Fund, it must pay a "withdrawal liability." *Id.* ¶¶ 2, 4. The Pension Fund required P.T.O. to pay either a lump sum, or to make monthly payments from August 2014 until July 2034, to discharge its withdrawal liability. *Id.* ¶ 7. P.T.O. made certain payments but ultimately fell into default. *Id.*; *see* 29 U.S.C. § 1399(c)(5)(A).

After this default, the Pension Fund sought relief in federal court, and in August 2017, a judgment was entered against P.T.O. for the unpaid withdrawal liability (including interest and statutory damages). [1] ¶¶ 8, 32–36. Except for some small post-judgment interest, this judgment remains unpaid. *Id.* ¶¶ 8, 37.

The driver leasing agreement between Dearborn and P.T.O. (provided with the complaint) contains a provision requiring Dearborn to indemnify and reimburse P.T.O. for certain costs and expenses. *See id.* ¶ 9. As trustee, Whobrey believes he may enforce the indemnification provision and receive, on the Pension Fund's behalf, payments owed by Defendants to P.T.O. *Id.* The agreement's indemnification language provides:

> The Company also agrees to indemnify P.T.O. for direct and indirect costs, expenses, legal fees and other charges they may incur with respect to any applicable Collective Bargaining Agreement, Pension Plan, Insurance Contracts and/or other employment obligations which arise due to any action taken by or on behalf of the Company or which occur or arise out of any action required but not undertaken by the Company and/or which result from any Contract, Federal or State law violations

3

concerning the assigned drivers. There shall be no P.T.O. mark-up on these payments.

[1-2] ¶ 8. According to Whobrey, this provision covers the March 2012 withdrawal liability P.T.O. incurred. *See* [1] ¶ 9.

After the March 2012 withdrawal, P.T.O.'s total liability amounted to $5,615,436.66. *Id.* ¶¶ 7, 30. The judgment of August 2017 guaranteed $6,612,121.69 to the Pension Fund. *Id.* ¶ 8. Whobrey asserts that pursuant to the driver leasing agreement between P.T.O. and Dearborn, Dearborn is responsible for its pro rata share of the withdrawal liability. *Id.* ¶ 42. The contributions P.T.O. made to the Pension Fund on behalf of employees provided to Dearborn Wholesale represents 36.47% of P.T.O.'s total contributions. *Id.* ¶ 45. The relevant contribution history would cover from 2002 to 2011, ten years preceding the withdrawal. *Id.* ¶ 44. Therefore, Whobrey assesses Dearborn's liability at $1,916,438.26, which he seeks to recover here. *Id.* ¶ 45. The Pension Fund notified Dearborn of its alleged liability by letter on December 17, 2019. *Id.* ¶ 46. Dearborn has failed to indemnify or reimburse P.T.O. *Id.* ¶ 47.

Whobrey believes the driver leasing agreement he attached to his complaint remains "valid, binding and enforceable." *Id.* ¶ 40. The agreement itself, however, reveals it was set to commence on May 2, 1997, and "remain in effect for a one year period," and while a representative for P.T.O. signed the agreement, the exhibit does not show that anyone signed on Dearborn Wholesale Grocers' behalf. [2-1] at 6.

4

Plaintiff Whobrey filed this lawsuit on July 31, 2024. [1]. On October 21, 2024, Defendant Dearborn moved to dismiss this complaint based upon Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [15].

## II. Legal Standard

To survive a 12(b)(6) motion, a complaint must provide "a short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so that the Defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570).

To evaluate a complaint under 12(b)(6), this Court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded allegations as true. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 629–30 (7th Cir. 2023). Notwithstanding this, a court need not accept legal conclusions or conclusory allegations. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Whobrey brought this claim to the Northern District of Illinois on diversity jurisdiction and neither party raises a conflict of law issue. *See* [1] ¶ 14. *See generally* [17]; [23]. Therefore, this Court will evaluate the claim under Illinois substantive law. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) ("[W]hen neither party raises a conflict of law issue in a diversity case, the federal

court simply applies the law of the state in which the federal court sits.") (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991)).

**III. Analysis**

Plaintiff alleges that Dearborn's failure to indemnify P.T.O.'s withdrawal liability to the Pension Fund resulted in Dearborn's breach of its contractual indemnity obligations. *See* [1] ¶¶ 9, 47–48. Dearborn moves to dismiss Whobrey's complaint, arguing that the complaint alleges no plausible facts supporting an enforceable contract to indemnify. [17] at 1, 4–8. Dearborn also seeks dismissal based upon Illinois' statute of limitations (among other theories). *See generally id.* Since this first argument finds support in the record, this Court need not address all of Dearborn's other arguments.[2]

Under Illinois law, to properly allege a breach of contract, the Plaintiff must demonstrate "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517,

---

[2] Because an amended complaint may be issued, this Court notes that on the record, the statute of limitations would not bar Plaintiff's claim. Actions brought pursuant to a written contract in Illinois must commence "within 10 years next after the cause of action accrued." 735 ILL. COMP. STAT. ANN. 5/13-206 (West 2007). Illinois courts deem a contract written, for the purposes of the statute of limitations, when the "parties are identified and all the essential terms are in writing and ascertainable from the instrument itself." *Blanchard & Assocs. v. Lupin Pharms., Inc.*, 900 F.3d 917, 923 (7th Cir. 2018) (quoting *Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876, 880 (Ill. App. Ct. 2009)). A breach of contract claim, in turn, "accrues when the breach of the contractual duty or obligation occurs, not when the party sustains damages." *Paprosky v. MCZ Dev. Corp.*, No. 20-cv-0218, 2021 WL 365768, at *1 (N.D. Ill. Feb, 3, 2021) (quoting *Ret. Plan for CTA Emps. v. CTA*, 156 N.E.3d 86, 94 (Ill. App. Ct. 2020)). Thus, the ten-year statute of limitations "begins to run when the payment becomes due and remains unpaid." *Id.*; *Kranzler v. Saltzman*, 942 N.E.2d 722, 727 (Ill. App. Ct. 2011). According to the complaint's allegations, P.T.O.'s purported obligation to pay the withdrawal liability (as either a lump sum or in monthly installments) began on August 1, 2014. [1] ¶¶ 7, 28. Even if the claim began accruing as early as the date of the first possible payment, Plaintiff brought this lawsuit on July 31, 2024, within the 10-year period.

522 (7th Cir. 2022) (quoting *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)). Ultimately, under Illinois law, "the starting point of any contract analysis is the language of the contract itself." *Church v. Gen. Motors Corp.*, 74 F.3d 795, 799 (7th Cir. 1996).

Indemnity agreements should be interpreted according to general principles of contract law. *Taracorp, v. NL Indus., Inc.*, 73 F.3d 738, 743 (7th Cir. 1996); *Charter Bank v. Eckert*, 585 N.E.2d 1304, 1310 (Ill. App. Ct. 1992) ("An indemnity agreement is to be construed as any other contract, and under the rules of contract construction, the intention of the parties is the paramount concern."). Unambiguous contract language "must be given" its "plain, ordinary and popular meaning." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (quoting *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004)). For proper interpretation of indemnity agreements in Illinois, the terms "must be set forth in clear and explicit language, so that the indemnitor's obligations are manifest." *Taracorp*, 73 F.3d at 743 (citing *Charter Bank*, 585 N.E.2d at 1310); *Mackowiak v. Harris Graphics Corp.*, No. 89-cv-0962, 1990 WL 16982, at *1 (N.D. Ill. Jan. 25, 1990) (The "language of the contract's indemnity provision controls the extent of the indemnitor's liability to the indemnitee.").

An enforceable contract need not be in writing; it "can be either express or implied-in-fact." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022). In Illinois, "an implied contract is created by law as a result of the parties' conduct," but this type of contract must still maintain the same elements as an express

contract. *Marcatante v. City of Chi.*, 657 F.3d 433, 440 (7th Cir. 2011) (citing *Zadrozny v. City Colls. of Chi.*, 581 N.E.2d 44, 47 (Ill. App. Ct. 1991)). An implied-in-fact contract occurs where "a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions [on] the part of the promisor which show an intention to be bound." *Gociman*, 41 F.4th at 883 (quoting *Marcatante*, 657 F.3d at 440) (alterations in original). An implied-in-fact contract still needs an offer, acceptance, and consideration—a meeting of the minds, or mutual assent, like any regular contract. *Paper Source LLC v. Sugar Beets, Inc.*, 263 N.E.3d 46, 54 (Ill. App. Ct. 2025).

In this case, as his support for imposing withdrawal liability incurred in 2012, Whobrey relies upon an indemnification provision in the driver leasing agreement between P.T.O. and Dearborn that, by its own terms, expired in May 1998. Ordinarily, when a contract expires, it ends. *Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 648 (7th Cir. 2011). Whobrey merely asserts in conclusory fashion that the parties "were and/or are parties to a driver leasing agreement" during the relevant times, and he otherwise fails to provide any information about any new agreement (or subsequent agreements), much less facts showing that it imposed indemnity obligations. In fact, Whobrey represents that the 1997–98 agreement embodies "the only version that the Pension Fund has been able to obtain to date." [23] at 9. As such, Whobrey has not plausibly alleged any valid and enforceable express contract that can support his breach of contractual indemnity claim.[3]

---

[3] Based upon the allegations, it remains unclear whether Whobrey believes P.T.O. and Dearborn operated under written contracts for the remainder of their relationship, or if instead an implied-in-

As alleged, Whobrey has also failed to plausibly identify any enforceable implied contract. Here, the complaint indicates some business relationship between P.T.O. and Dearborn existed between 2002–2011 because it states that 36.47% of P.T.O.'s total contributions during that period represented Dearborn drivers, but no factual allegations in the complaint allow an inference that Dearborn accepted the same terms for any existing driver licensing agreement throughout that timeframe. *See iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 224 N.E.3d 221, 227 (Ill. App. Ct. 2022) (Since the Agreement had expired by its own terms, "neither the Agreement nor any provision thereof could have been the basis of the parties' business relationship," and even though "the parties continued to conduct business" there "is no evidence that the parties' continuing relationship included a promise to preserve" a prior contractual "exclusivity provision."); *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601, 604 (7th Cir. 2002) (holding that just because the parties continued to do business after expiration, there was no evidence that the parties agreed to extend the disputed clauses beyond their agreement's expiration); *Paper Source*, 263 N.E.3d at 54 (The "continued payment of rent only implies a contract term requiring defendant to pay that amount of rent. It does not imply any additional terms."); *see also Auto Driveaway Franchise Sys.,*

---

fact contractual relationship arose from their behavior. In reality, it must be one or the other because an "implied contract cannot coexist with an express contract on the same subject." *Marcatante v. City of Chicago*, 657 F.3d 433, 440 (7th Cir. 2011) (quoting *Maness v. Santa Fe Park Enters., Inc.*, 700 N.E.2d 194, 200–01 (Ill. App. Ct. 1998). To the extent it is the former, Whobrey's breach of contractual indemnity claim cannot stand, because he fails to allege any enforceable contractual terms. Likewise, as explained below, Whobrey also fails to properly allege the existence of an implied contract. *See* [1] ¶ 22; [1-2] at 6.

9

*LLC v. Auto Driveaway Richmond, LLC*, No. 18-cv-4971, 2019 WL 3302223, at *5, 8 (N.D. Ill. July 23, 2019).

In short, nothing alleged in the complaint could lead this Court to reasonably infer that Dearborn intended to bind itself to the same terms of the expired agreement for an additional 13 years. Because the complaint does not state "facts or circumstances" indicating that Dearborn and P.T.O. engaged in an implied-in-fact contract beyond May 1998—let alone that the indemnification provision would have been incorporated into the new contract—Whobrey has not plausibly stated his breach claim. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[4]

## IV. Conclusion

Because Plaintiff does not ground its complaint in a valid and enforceable agreement that existed for the relevant 2002–2011 withdrawal liability period, this Court grants Defendant's motion to dismiss. If Plaintiff can, consistent with his

---

[4] In some cases, the terms of an agreement may extend beyond a contract's expiration. The United States Supreme Court has explained that "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 206 (1991). For example, an arbitration clause may extend beyond the expiration of a contract to cover a post expiration grievance "where it involves facts and occurrences that arose before expiration" and where the post expiration infringement involves "a right that accrued or vested under the agreement." *Id.*; *see Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 252–53 (1977). Here, however, the obligation to cover withdrawal liability arose, if at all, in 2012, almost 14 years after the agreement expired; as a result, this case involves a post-expiration grievance. Likewise, the contributions obligation arose between 2002 and 2011, outside the 1997–1998 contract period. Neither the contract nor Whobrey's allegations extend the indemnification obligation beyond the term of the parties' contract.

obligations under Rule 11, amend his complaint to cure the deficiencies noted in this order, he may file an amended complaint within 30 days of the entry of this order.

DATED: February 27, 2026            ENTERED:

                                             John Robert Blakey
                                             United States District Judge